**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ENTREPRENEUR MEDIA, INC.**, a California corporation, 2445 McCabe Way, Irvine, CA 92614<br><br>**Plaintiff**,<br><br>v.<br><br>**WESLEY CREEL,** an individual 12424 Rivers Edge Dr., Potomac, MD 20854 Montgomery County<br><br>**STUDENT HORIZONS, INC.** a Maryland corporation 12424 Rivers Edge Dr., Potomac, MD 20854 Montgomery County<br><br>**Defendants**. | CASE NO.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Entrepreneur Media, Inc. ("EMI") brings this complaint against Defendants for federal trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*. EMI seeks monetary, injunctive, and other appropriate relief, and states the following in support thereof:

**THE PARTIES**

1. EMI is a California corporation with its principal place of business at 2445 McCabe Way, Irvine, California 92614.

*2.* On information and belief, Wesley Creel ("Creel"), an individual residing in Potomac, Maryland, operates the website located at *entrepreneuredu.org*, and is the president and founder of Student Horizons, Inc. On information and belief, Creel was personally aware of, and authorized, approved, ratified, participated in, and instigated the wrongful conduct alleged in this Complaint.

1

3.      On information and belief, Student Horizons, Inc. is a Maryland corporation with its principal place of business in at 12424 Rivers Edge Dr., Potomac, MD 20854.  Student Horizons registered and owns the *entrepreneuredu.org* domain name.

4.      EMI is ignorant of the true names of defendant Does 1 through 10 ("Doe Defendants"), inclusive, and therefore sues those defendants by such fictitious names.  On information and belief, Doe Defendants are responsible for the acts alleged in this Complaint.  When the true names of the Doe Defendants are ascertained, EMI will seek leave of this Court to amend this Complaint to name those individuals or entities.

5.      On information and belief, Creel, Student Horizons, and the Doe Defendants (collectively, "Defendants") were the agents and employees of each other and, at all times mentioned, acted within the course and scope of such agency and employment.

## JURISDICTION AND VENUE

6.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over EMI's claims for relief for violation of the Lanham Act.

7.      This Court has personal jurisdiction over Defendants because Defendants reside, maintain offices, and conduct business in this State.

8.      Venue in this Court exists under 28 U.S.C. §§ 1391(b)(1), (2) as Defendants reside in this District and a substantial part of the events giving rise to EMI's claims occurred within this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### EMI and its Successful ENTREPRENEUR® Brand

9.      For over thirty years, EMI (together with its predecessor companies) has published magazines and books which provide editorial content and other information, as well as offer products and services related, or of interest, to businesses, business owners, and prospective business owners.

10.     EMI's longstanding marketing and sales efforts have been conducted primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR Mark").

11.     EMI is the publisher of ENTREPRENEUR magazine and other publications incorporating the ENTREPRENEUR name in their titles.  ENTREPRENEUR magazine is published monthly with a current paid circulation, including both subscriptions and newsstand sales, of more than 600,000 in the United States.  ENTREPRENEUR magazine is also sold and distributed in over 100 foreign countries.

12.     ENTREPRENEUR magazine routinely features articles about and interviews with some of the biggest names in the entrepreneur community, including Richard Branson, skateboarding icon Tony Hawk, NFL quarterback Drew Brees, and hip hop mogul Russell Simmons:



13.     ENTREPRENEUR magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EMI's top-secret formula:



14. EMI also publishes over 200 book titles under the ENTREPRENEUR Mark and ENTREPRENEUR PRESS® imprint:





15. EMI has also launched many of its most successful titles as e-books:



16. EMI also conducts seminars, workshops, and other educational programs geared towards teaching others to successfully start and operate businesses.  These events have included: (i) the Sales Success Secrets/Business Success Secrets® Breakfasts sponsored by State Farm Insurance; (ii) the Women in Charge Conferences sponsored by OPEN—American Express; (iii) the Business Success Secrets® Breakfast Seminars sponsored by Deluxe Corporation and Sprint; (iv) the Winning Strategies for Business Conference sponsored by Verizon; and (v) Entrepreneur Magazine's Growth 2.0 Conferences presented by The UPS Store®:

///

///




17.     EMI operates a number of websites to further disseminate and market its content and services, including *Entrepreneur.com*, *YoungEntrepreneur.com*, *EntrepreneurEnEspanol.com*, and *EntrepreneurPress.com*.:



18.     The website at *Entrepreneur.com* has averaged over 6 million unique visitors and over 73.5 million page views per month, and it is ranked, respectively, as the 1,144 and 1,984 most visited website in the United States and world by Alexa.

19.     EMI has also launched apps for iPhones/ iPads, Android, and Blackberry:



20.     EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding

relationships have included: (i) The UPS Store® (an annual contest and awards ceremony for selecting and promoting top established entrepreneurs, emerging entrepreneurs, and college entrepreneurs); (ii) MSNBC; (iii) Reuters; (iv) *PerfectBusiness.com*; (v) Great Place to Work® (annual Best Small & Medium Workplaces rankings); and (vi) Palo Alto Software (Entrepreneur Magazine's Business Plan Pro® software):



21.     More specifically, EMI has partnered with Princeton Review, a top test preparation and college admissions consulting company, to publish an annual ranking of the top fifty schools for entrepreneurship programs.  Not only is this ranking report widely released by Princeton Review (e.g., http://www.princetonreview.com/top-entrepreneurial-colleges.aspx), but EMI publishes it in the ENTREPRENEUR Magazine and devotes a portion of its *Entrepreneur.com* website to this annual report (http://www.entrepreneur.com/topcolleges/index.html). EMI and Princeton Review also offer profiles of each college, as well as direct information about each program from current students and recent alumni.

///

///





22.     Through careful cultivation of its various products and services, EMI has developed an outstanding reputation as an innovator in the field of business start-up and strategy and has established an extremely loyal customer following.

23. EMI has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR brand. Through EMI's widespread and continuous use of the ENTREPRENEUR Mark, the Mark has acquired extensive goodwill, has developed a high degree of distinctiveness, and has become famous, well known, and recognized as identifying goods and services that originate from EMI.

24. The fame and quality of the products and services bearing the ENTREPRENEUR Mark have been widely recognized through industry awards and commendations. For example, ENTREPRENEUR magazine was a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious Maggie award in 2008, 2009, 2010, and 2011 from the Western Publishing Association. EMI's website at *Entrepreneur.com* has been awarded "Outstanding Achievement in Web Development" by the Web Marketing Association, and its networking website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by *Mashable.com*. EMI has also received multiple Integrated Marketing Awards from Min Online for its magazine and website. In addition, both ENTREPRENEUR magazine and the *Entrepreneur.com* website have been named to BtoB magazine's 2010, 2011, and 2012 lists of the top 50 media outlets for business-to-business advertising.

### EMI's Intellectual Property Rights

25. EMI owns, and has obtained United States federal registrations for, the ENTREPRENEUR Mark, as well as a family of related marks incorporating the term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
| --- | --- | --- |
| ENTREPRENEUR | 16: Paper goods and printed matter; namely magazines, books and published reports pertaining to business opportunities<br><br>First Use in Commerce: May 2, 1978 | 1,453,968<br><br>Aug. 25, 1987 |

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers and; web advertising services, namely, providing active links to the websites of others<br><br>First Use in Commerce: July 1992 | 2,263,883<br><br>July 27, 1999 |
| ENTREPRENEUR | 38: Streaming of video and digital material on the Internet<br><br>First Use in Commerce: August 2007 | 4,260,948<br><br>Dec. 18, 2012 |
| ENTREPRENEUR | 35: Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises<br><br>41: Educational services, namely, conducting seminars on the development and operation of businesses, and conducting work shops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning and insurance<br><br>First Use in Commerce: October 18, 1991 | 2,502,032<br><br>Oct. 30, 2001 |
| ENTREPRENEUR | 9: Downloadable computer software and software for mobile devices for the reproduction, display and distribution of digitized content<br><br>First Use in Commerce: June 2008 | 4,345,424<br><br>Mar. 19, 2013 |
| ENTREPRENEUR .COM | 9: Downloadable podcasts in the field of business, current events, lifestyle issues, and developments in science and technology<br><br>35: Providing business information and advice via a web site on a global computer network<br><br>38: Broadcasting programs via a global computer network; and streamlining of audio and video material via the Internet; telecommunications services, namely, transmission of podcasts<br><br>First Use in Commerce: September 2002 | 3,519,022<br><br>Oct. 21, 2008 |

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR ENESPANOL.COM | 35: Advertising and business services, namely, arranging for the promotion of goods and services of others by means of a global computer network and other computer online service providers; providing business information for the use of customers in the field of starting and operating businesses and permitting customers to obtain information via a global computer network and other computer online service providers; internet advertising services, namely, promoting the goods and services of others by providing a web site with active links to their websites featuring their goods and services<br><br>First Use in Commerce: October 13, 2006 | 3,266,532<br><br>July 17, 2007 |
| ENTREPRENEUR PRESS | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br><br>35: On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br><br>First Use in Commerce: April 1999 | 3,470,064<br><br>July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 16: Paper goods and printed matter; namely, magazines, books, booklets and published reports pertaining to business opportunities<br><br>First Use in Commerce: January 27, 2006 | 3,204,899<br><br>Feb. 6, 2007 |

26. The above marks are collectively referred to as the "EMI Marks." The above registrations are collectively referred to as the "EMI Registrations."

27. EMI's registration numbers 1,453,968, 2,263,883 and 2,502,032 for ENTREPRENEUR are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations validity, as well as EMI's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations

28. The EMI Registrations constitute prima facie evidence that the marks are valid, and that EMI is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

29. EMI also has extensive common law rights in the ENTREPRENEUR Mark based on its use of that Mark over the last three decades.

30. Through extensive use, marketing, branding, and promotion, the ENTREPRENEUR Mark is well-known and famous and enjoys substantial recognition, goodwill, and association with EMI. The public distinguishes EMI's goods and services from those of other publishers and providers of educational services on the basis of the ENTREPRENEUR Mark. The ENTREPRENEUR Mark is distinctive and has acquired secondary meaning in the United States.

31. The U.S. District Court for the Central District of California held that:

- "The extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR Mark] as a strong mark in the industry."
- The ENTREPRENEUR Mark "is a strong distinctive mark, deserving of significant protection."
- The ENTREPRENEUR Mark "has acquired secondary meaning."

*Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, at *9-10, 13 (C.D. Cal. June 23, 2004).

32. The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212, 215 (9th Cir. 2004).

33.     Recently both a Magistrate Judge and District Court judge in the Eastern District of Virginia found the ENTREPRENEUR Mark to be distinctive.  *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011).

**Defendants' Unauthorized Use of EMI's Marks**

34.     Defendants offer educational information and services under their ENTREPRENEUREDU.ORG Mark ("ENTREPRENEUR EDU Mark").



35.     More specifically, Defendants use the ENTREPRENEUR EDU Mark to offer a variety of products and services, such as (i) general rankings of the top undergraduate and graduate programs for entrepreneurship programs; (ii) articles about and profiles of each of these colleges and their respective programs; and (iii) articles about current student's and recent alumni's experiences and success.

36.     Defendants registered, own, and operate the *entrepreneuredu.org* domain name to promote their goods and services.

37.     Given EMI's renown, online presence, and its long history of providing articles, profiles, newsletters, and information for small- and mid-sized businesses, as well as its annual rankings of the top colleges for entrepreneurship programs, EMI is very concerned that consumers will likely suffer confusion and mistakenly believe that Defendants and their goods and services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with EMI.

38.     Defendants will thus enjoy the benefits of EMI's reputation and goodwill based on this consumer confusion, to EMI's detriment.

39.     EMI contacted Defendants several times to express EMI's concerns regarding this potential for confusion, but Defendants have refused to cease use of the infringing mark.

**EMI Is Suffering Harm**

**From Defendants' Continuing Infringement and Unlawful Conduct**

40. Defendants' continued use of the ENTREPRENEUR EDU Mark in commerce violates EMI's valuable intellectual property rights in the EMI Marks and EMI Registrations, and Defendants' knowing, intentional, and willful use of this Mark is damaging EMI.

41. Due to Defendants' continuing willful infringement and unlawful conduct, EMI is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights. EMI had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

42. EMI's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendants. The public interest is best served by granting EMI's requested relief against Defendants.

**FIRST CLAIM FOR RELIEF**

**Federal Trademark Infringement – 15 U.S.C. § 1114**

43. EMI incorporates by reference the factual allegations set forth above.

44. EMI owns the EMI Marks and the EMI Registrations. The trademarks reflected in the EMI Registrations are strong and distinctive and designate EMI as the source of all products and services advertised, marketed, sold, or used in connection with the EMI Marks. In particular, the ENTREPRENEUR Mark has been used for over thirty years and has been recognized by federal district courts as a strong and distinctive mark.

45. EMI is the senior user of the EMI Marks as it began use of the marks in interstate commerce prior to Defendants' first use of the ENTREPRENEUR EDU Mark.

46. Defendants do not have authorization, license, or permission from EMI to market and sell their services under the EMI Marks or the ENTREPRENEUR Mark, which are confusingly similar to

the ENTREPRENEUR EDU Mark and closely related to the particular products and services with which the EMI Marks and the ENTREPRENEUR Mark have come to be associated.

47. Defendants were aware of the EMI Marks and the ENTREPRENEUR Mark as Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's numerous communications to Defendants about this issue. Thus, Defendants' unauthorized use of the EMI Marks was and is knowing, intentional, and willful.

48. As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

49. Defendants' actions thus constitute trademark infringement.

50. Unless an injunction is issued enjoining any continuing or future use of the ENTREPRENEUR EDU Mark by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably damage EMI.

51. Defendants' activities have caused and will continue to cause irreparable harm to EMI, for which it has no adequate remedy at law, in that: (i) the EMI Marks and the ENTREPRENEUR Mark comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing. Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

52. Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived by Defendants from their actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendants' conduct.

53. Defendants' conduct was intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendants.

54. Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), so EMI is entitled to an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF

### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

55. EMI incorporates by reference the factual allegations set forth above.

56. The EMI Marks, and in particular the ENTREPRENEUR Mark, are strong and distinctive and designate EMI as the source of all goods and services advertised, marketed, sold, or used in connection with those marks. In addition, by virtue of EMI's decades-long use of the ENTREPRENEUR Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under that mark, the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of California, and the United States, associate the EMI Marks with a single source of products and services.

57. EMI is the senior user of the EMI Marks as it began use of the Marks in interstate commerce prior to Defendants' first use of the ENTREPRENEUR EDU Mark.

58. Defendants were aware of the EMI Marks and the ENTREPRENEUR Mark, as Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's numerous communications to Defendants about this issue. Thus, Defendants' unauthorized use of the EMI Marks was and is knowing, intentional, and willful.

59. On information and belief, through their use of the confusingly similar ENTREPRENEUR EDU Mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that EMI somehow authorized,

originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar ENTREPRENEUR EDU Mark.

60. In fact, there is no connection, association, or licensing relationship between EMI and Defendants, nor has EMI ever authorized, licensed, or given permission to Defendants to use the EMI Marks in any manner.

61. On information and belief, Defendants' use of the ENTREPRENEUR EDU Mark will likely cause confusion as to the origin and authenticity of Defendants' websites and related goods and services and will likely cause others to believe that there is a relationship between Defendants and EMI.

62. As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

63. Defendants' actions thus constitute false designation of origin and unfair competition.

64. Defendants' activities have caused, and will continue to cause, irreparable harm to EMI, for which it has no adequate remedy at law, in that: (i) the EMI Marks, including the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing. Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

65. Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived by Defendants from their actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendants' conduct.

66. Defendants' conduct was intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendants.

67.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), so EMI is entitled to an award of attorneys' fees/costs.

**PRAYER**

WHEREFORE, EMI prays for the following relief:

A.     An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service, to:

1. cease all use and never use the ENTREPRENEUR EDU Mark, the EMI Marks, or any other mark likely to cause confusion with the EMI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

2. never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendants are in any manner associated or connected with EMI, or are licensed, approved, or authorized in any way by EMI;

3. never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of their goods or services, are related to, authorized, or sponsored by EMI;

4. cease all use of the *entrepreneuredu.org* domain name and any similar domain names, and never register any domain names that contain any of the EMI Marks, or any domain names confusingly similar to any of the EMI Marks;

5. never unfairly compete with EMI in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the

production, distribution, marketing, and/or sale of products and services bearing any of the EMI Marks; and

6. Never apply for, or seek to register, the ENTREPRENEUR EDU Mark or any mark that is likely to cause confusion with any of the EMI Marks.

B. An order pursuant to 15 U.S.C. § 1116(a) directing Defendants to file with the Court and serve upon EMI's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

C. An order transferring to EMI all domain names, including but not limited to *entrepreneuredu.org*, in Defendants' possession, custody, or control that include the word "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to, or contain any of, the EMI Marks.

D. An order finding that, by the acts complained of above, Defendants have infringed EMI's federally registered trademarks in violation of 15 U.S.C. § 1114.

E. An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

F. An order pursuant to 15 U.S.C. § 1117(a) awarding EMI its actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages;

G. An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding EMI its reasonable attorneys' fees.

H. An order pursuant to 15 U.S.C. § 1117(a) awarding EMI all of its costs, disbursements, and other expenses incurred due to Defendants' unlawful conduct.

I. An order awarding EMI pre-judgment interest.

J. An order awarding EMI such other relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, EMI demands a trial by jury.

Dated:  July 23, 2013

Respectfully submitted,

/s/
Kirstin M. Scheffler (Bar No. 29560)
LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, IL 60606
(312) 876-7613 / (312) 993-9767 Fax
*kirstin.scheffler@lw.com*

Attorney for Plaintiff

ENTREPRENEUR MEDIA, INC.

*Of Counsel:*

Perry J. Viscounty (*pro hac vice pending*)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
(714) 540-1235 / (714) 755-8290 Fax
*perry.viscounty@lw.com*

Jennifer L. Barry (*pro hac vice pending*)
LATHAM & WATKINS LLP
600 West Broadway, Suite 1800
San Diego, CA  92101-3375
(619) 236-1234 / (619) 696-7419 Fax
*jennifer.barry@lw.com*